UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 11-60102-Civ-COHN

SHANAZ ALI and STEPHANIE GROH,

Magistrate Judge Seltzer

Plaintiffs,

v.

MARGATE SCHOOL OF BEAUTY, INC.
and STANLEY BARNETT,

Defendants.

_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF GROH

**THIS CAUSE** is before the Court upon Defendants' Motion for Summary Final

Judgment as to Plaintiff Stephanie Groh [DE 34], Plaintiff's Response in Opposition [DE

43], and Defendant's Reply thereto [DE 45].  The Court has carefully considered the

motions, exhibits and all relevant filings, and is otherwise fully advised in the premises.

I.  BACKGROUND

Plaintiff Stephanie Groh ("Groh") filed this action against Defendant Margate

School of Beauty, Inc. ("Margate School"), alleging retaliation in violation of Title IX, 20

U.S.C. § 1681 *et seq*., which prohibits discrimination on the basis of gender in any

education program or activity receiving Federal financial assistance.[1]  Groh was

employed as an instructor of massage therapy at Defendant's private trade school from

May of 2010 until November of 2010.  There is no dispute that Title IX applies to

Margate School.  After the parties engaged in discovery, Defendants moved for

summary judgment as to Groh's claim.[2]

_____

[1]  The claims of Co-Plaintiff Shanaz Ali will be addressed in a separate order.

[2]  Groh only alleged a single claim for retaliation against Defendant Margate
School of Beauty.  Groh did not assert any claims against individual Defendant Stanley

After the commencement of her evening teaching position with Margate School in May of 2010, Groh received an initial favorable review in June of 2010 by Karen Silvia, Director of Education.  Deposition of Karen Silvia at 28-29 [DE 34-3].  In late August of 2010, after its routine distribution of student evaluations, Margate School received various student evaluations of its instructors, including Groh.  These anonymous[3] student evaluations were not all positive, as six of them included comments regarding Groh that were negative.[4]  Exhibit 2 to Silvia deposition [DE 43-3]; Silvia deposition at 64, 71-72.  Groh met with Silvia to discuss the evaluations, but Silvia told her not to worry about them.  Deposition of Stephanie Groh at 41 [DE 34-4]; Silvia deposition at 57-58.

In September of 2010, Defendant Stanley Barnett, the owner and President of Margate School, saw Groh apparently sleeping on a massage table while senior students were giving massages to clients.  Deposition of Stanley Barnett at 75 [DE 34-2].  Barnett entered the classroom and told Groh to go home if she was tired.  Id.  Groh does not deny she was lying down at that time, but recalled that she hurt her back moving massage tables earlier that evening, took out a heat pack, and laid down for a few minutes with the pack on her back.  Groh deposition at 57.  Groh went to Barnett's

---

Barnett.  Despite the clear language of Plaintiff's Amended Complaint [DE 15], Defendants' motion addresses claims against individual defendant Stanley Barnett that were not alleged, and will not be addressed herein.

[3] Margate school did receive one student complaint about Groh attributable to Daniel Keogh.  Affidavit of Daniel Keogh [DE 34-6]; Groh Deposition at 48-49.

[4] Groh contends that these evaluations are hearsay evidence.  Margate asserts that they are not hearsay, as they are not "admitted" for their truth, but rather to show that Margate had reasons to reduce Groh's hours in September of 2010.  For purposes of the motion for summary judgment, the Court concludes that the documents come under the business records exception to the hearsay rule.

office the next day to explain to him what he saw.  Id. at 58.  Barnett had also witnessed

Groh on two occasions eating food in a classroom, which was against the rules,

although Groh testified that everyone ate food in the classrooms.  Barnett deposition at

79, 82; Groh Deposition at 53-54, 56.  Miriam Tirado, Director of the School (second in

command to Barnett), also testified that she saw Groh on two occasions eating food in

the classrooms while she was supposed to be teaching, but could not recall when those

incidents took place.  Deposition of Miriam Tirado at 16, 18.  At other unspecified times

on her walk-throughs of the school, Tirado saw Groh sleeping at her desk during class

and at other times "not teaching the class."  Id. at 27, 31.  Tirado never made a record

of these incidents and supposedly gave this information to Karen Silvia, but Silvia had

no recollection of such negative information regarding Groh.  Tirado deposition at 33;

Silvia deposition at 24.

In October of 2010, Groh had her hours reduced from 24 per week to 16 per

week.  Groh deposition at 33-39.   Groh was never informed that this change was made

because of poor performance – rather, she believed Margate School administrators

favored the more tenured day time massage instructor, Julio Sanchez, who needed to

increase his hours, and because Margate School was up for reaccreditation and trusted

Julio more as an instructor.  Id.  However, Groh does concede that the student

evaluations may have had something to do with her reduction in hours.  Id. at 35.[5]

---

[5]  Groh also testified about another incident between her and Defendant Barnett,
involving his questioning her about pizza slices she was bringing to her students.  Groh
deposition at 63.  Although commonplace for students to receive pizza for lunch on
Saturday clinic days (when senior students gave massages to paying customers while
newer students observed), Barnett stopped her in the hallway to count the number of
pizza slices she had as compared to the number of student tickets she had.  Id.  No
other administrator or witness testified about this incident.

The incident that gave rise to this action occurred on Monday, November 8, 2010.  Prior to beginning her class at Margate School that evening, Groh saw co-Plaintiff and student Shanaz Ali crying and shaking in the hallway.  Groh deposition at 68; Deposition of Shanaz Ali at 42 [DE 33-4].  Upon reaching her, Ali explained that Defendant Barnett had just propositioned her in his office, and she did not know what to do.  Id.  Groh told Ali that she would take care of it.  Ali deposition at 43.  Groh then immediately went to report the incident to Melony Dennis, Margate's Compliance Officer, who reported directly to Defendant Barnett.  Groh deposition at 75.  As the time was now after 6:00pm, Dennis was packing up her office and ready to leave for the day.  Id. at 76-77, 83.  Groh told her that her "student, Shanaz Ali, has been approached by the owner of the school for – and he's made – has come on to her and is making sexual advances and the girl is hysterical."  Groh deposition at 77.  Dennis told her "All right.  Look, I – I have to be somewhere.  We – we will – we will talk about this."  Id.  Groh taught her class that night but Ali did not attend.

The next day, Tuesday, Groh received a call from School Director Miriam Tirado asking Groh to come in to the School for a meeting.  Id. at 81, 83.  Groh was not scheduled to work for two more days, thus the meeting was scheduled for Thursday, November 11, 2010.  The night before the meeting, one of Groh's students called her at home upset that Groh had been fired.  Id. at 86.  Groh thereupon arrived at the meeting the next day with an attorney.  Id. at 88.  Upon her arrival, she saw Defendant Barnett speaking with one of the administrators.  Id.  Plaintiff and her attorney were made to wait over 30 minutes past their appointment time.  At the meeting, attended for Margate School by Karen Silvia, Melony Dennis and Miriam Tirado, a letter of termination was read to Groh with no other explanation.  Id. at 89; Silvia deposition at 39-40.  The

4

termination letter did not reference any particular transgressions, other than "unprofessional conduct."   Exhibit 3 to Silvia Deposition [DE 43-4].  The termination occurred just three days after Groh reported the incident of sexual harassment.

Karen Silvia testified that she had no knowledge of the termination until one hour prior to the meeting with Groh, had no input into the decision, and did not draft the letter.  Silvia Deposition at 37, 40.  However, the letter is on Silvia's letterhead and was signed by her.  The next day, Melony Dennis, Compliance Officer, and the person to whom Groh had reported the incident between Barnett and Ali, wrote Groh a glowing personal recommendation letter on Dennis' own letterhead.  Groh deposition at 79-80.

Margate School has a sexual harassment policy that directed students to report any such incidents to the "Director of the School or the Office Manager."  Sexual Harassment Policy [page 13-14 of DE 33-2].  While Miriam Tirado was the Director, it is not clear who the "Office Manager" was at the time of the November 8 incident.  The policy then states that if a verbal complaint to the Director has proven ineffective, or you are unable to complain to the Director, then students are to file a complaint through Margate School's grievance procedure.  Id.  The procedure starts with a student first notifying her instructor either verbally or in writing, and if not resolved, then the student is to notify the Director of Student Affairs.   Handbook at p. 9 [DE 33-2].  This grievance procedure appears on its face to apply only to students.  Id.

## II. DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant

6

or unnecessary will not be counted."  Id. at 248.

## B.  Title IX Retaliation

Groh's claim under Title IX alleges termination in retaliation for reporting an instance of sexual harassment of a student.  In 2005, the United States Supreme Court expressly recognized a claim for retaliation under Title IX.  Jackson v. Birmingham Bd. Of Educ., 544 U.S. 167, 183 (2005).  While the Supreme Court did not spell out the elements of such a claim, and this Court did not find an appellate decision from the United States Court of Appeals for the Eleventh Circuit that strictly applies Title VII retaliation caselaw to a Title IX retaliation action, both parties argue that Title VII caselaw provides the proper framework.  Thus, to establish a prima facie case for retaliation, Plaintiff must show that: 1) she engaged in protected activity; 2) her employer was aware of that activity; 3) she suffered adverse employment action; and 4) there was a causal link between her protected activity and the adverse employment action."  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).  "To meet the causal link requirement, the plaintiff 'merely has to prove that the protected activity and the negative employment action are not completely unrelated.'"  Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997) (quoting E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993)).  However, "[t]he plaintiff must at least establish that the employer was actually aware of the protected expression at the time the employer took adverse employment action against the plaintiff" and "[t]he employer's awareness of the statement may be established by circumstantial evidence."  Holifield, 115 F.3d at 1566 (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993); Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1524 (11th Cir. 1991)).

Once the plaintiff establishes his prima facie case, the employer must proffer a

legitimate, non-discriminatory reason for the adverse employment action.  Holifield, 115 F.3d at 1566 (citing E.E.O.C. v. Reichhold Chems., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993)).  If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation.  Holifield, 115 F.3d at 1566 (citing Meeks, 15 F.3d at 1021; Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)).  However, the Supreme Court has held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

### 1. Retaliation - Prima Facie Case

Defendant[6] argues that Plaintiff has failed to show that she engaged in protected activity, failed to show that she was subject to adverse action after her protected activity, and failed to show a sufficient causal connection to her termination.  Defendant spends only two conclusory sentences arguing in its initial memorandum that Plaintiff failed to engage in protected activity.  The record shows that Groh reported the alleged sex harassment to Melony Dennis, Margate School's Compliance Officer.  Dennis acknowledged the report, but stated that she would discuss it with Groh the next day.  Miriam Tirado, School Director, called Groh the next day to set up a meeting.  Melony Dennis was present at the meeting, which turned out to be Groh's termination meeting, not a meeting to discuss Groh's report of sexual harassment by Barnett on student Shanaz Ali.

---

[6] From this point on in this Order, "Defendant" shall refer only to Defendant Margate School.

Only in its reply brief does Defendant argue for the first time that it was not aware of the protected activity because Groh's complaint was not made in a manner consistent with Defendant's Sexual Harassment Policy.  Failure to raise this argument in Defendant's initial memorandum is improper.  For purposes of summary judgment, however, it seems reasonable that Groh would report alleged harassment by Barnett, the owner of the school, to the school's Compliance Officer, Melony Dennis.  The Court concludes that there is at least a genuine issue of material fact that Groh did engage in protected activity, and that Defendant Margate School was aware of that activity.

Defendant next argues that Groh's termination was the continuation of adverse action that began with the reduction of Groh's hours in October of 2010.  However, the record is disputed as to whether the reduction in hours was in fact an adverse action, and, whether there this earlier adverse action was part of progressive discipline leading to Groh's termination.  Groh testified that when she was made aware of some negative student comments in September, Karen Silvia told her not to worry about it.  Groh also stated that her hours were reduced so that Julio Sanchez, the other massage instructor, could increase his hours for his own reasons.  Third, there is no concrete evidence that the School's awareness of the alleged shortcomings in Groh's performance occurred between the reduction of hours and the termination, because Tirado did not state when she noticed these shortcomings.  Clearly, the termination of Groh on November 11, 2010 was an adverse action that followed the November 8, 2010 report of sexual harassment.  Thus, there are disputed issues of material fact regarding whether the termination can be viewed as part of a process that began prior to the report of sex harassment.

What cannot be disputed is the temporal connection between Groh's report of

sexual harassment and her termination.  The day following her report, she is called to

the office for a meeting.  When that meeting takes place just three days after her report,

she is terminated.  Various reported decisions in the Eleventh Circuit have found that

months of delay is typically insufficient to show such a connection as a matter of law.

Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (stating that United States

Supreme Court has cited with approval decisions in which a three to four month

disparity was insufficient to show casual connection) (citing Clark County School Dist. v.

Breeden, 532 U.S. 268, 273 (2001)); Gaston v. Home Depot, 129 F. Supp. 2d 1355,

1377 (S.D. Fla. 2001) (Judge Gold) (three to five months insufficient).  This case

involves a temporal link of one to three days.  For purposes of summary judgment,

Plaintiff has met all prongs of her prima facie case.


### 2.  Legitimate Reason and Alleged Pretext

Defendant asserts that it has put forth legitimate reasons for Groh's termination,

particularly performance deficiencies found in the student evaluations and

unprofessional conduct through Barnett and Tirado's observations of Groh.  The Court

agrees.  However, Plaintiff asserts that the these reasons are a pretext for her

termination as a result of her protected activity of reporting Ali's claim of sexual

harassment by Barnett.  For example, the same student evaluations that had written

negative comments also contained at least "average" ratings or better in response to

specific questions.  More importantly, Karen Silvia, Director of Education and the

purported author of the termination letter, had no knowledge of Groh's termination until

just prior to the termination meeting.  Further evidence of pretext is the lack of dates or

documentation given by Tirado as to when she allegedly witnessed various instances of

Groh eating food during class, sleeping at her desk, or not otherwise teaching her class. Tirado also testified that student complaints would be investigated by having the Director of Education personally evaluate that instructor's class, something that did not happen in this case.  Tirado deposition at 10, 14. Finally, the day after her termination, Melony Dennis, the compliance officer to whom Groh reported the alleged sexual harassment, gave Groh a positive recommendation letter.  This evidence is sufficient for the Court to conclude that there are genuine issues of disputed material fact as to whether Defendant's asserted justification for Groh's termination are false.


### III.  CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Final Judgment as to Plaintiff Stephanie Groh [DE 34] is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 30th day of September, 2011.

JAMES I. COHN
United States District Judge

copies to:

counsel of record on CM/ECF