UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60102-CIV-COHN

Magistrate Judge Seltzer

SHANAZ ALI and STEPHANIE GROH,

    Plaintiffs,

vs.

MARGATE SCHOOL OF BEAUTY, INC.
and STANLEY BARNETT,

    Defendants.
_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF ALI'S TITLE IX CLAIM, ASSAULT CLAIM AND FALSE IMPRISONMENT CLAIM, ORDER DENYING MOTION AS TO BATTERY CLAIM and ORDER DENYING MOTION TO STRIKE ERRATA SHEET**

**THIS CAUSE** is before the Court upon Defendants' Motion for Summary Final Judgment [DE 33][1] and Defendants' Motion to Strike Errata Sheet [DE 46], Plaintiff Ali's Responses to Defendants' Motions [DE's 42 and 48], and Defendants' Replies [DE's 44 and 50]. The Court has carefully considered the motions, all related filings, and is otherwise fully advised in the premises.

**I. BACKGROUND**

Plaintiff Shanaz Ali ("Ali") filed this action against Defendant Margate School of Beauty, Inc. ("Margate School"), alleging sex discrimination and sexual harassment in violation of Title IX, 20 U.S.C. § 1681 *et seq.*, which prohibits discrimination on the basis of gender in any education program or activity receiving Federal financial assistance. Ali's Amended Complaint also contains claims for assault, battery, and false imprisonment against Defendant Stanley Barnett ("Barnett"), the owner of Margate

---

[1] The Motion filed at Docket Entry ("DE") 32 will be denied as duplicative.

School [DE 15].[2]  Ali was a student at Margate School, a private trade school, from May of 2010 until late in 2010 or early in 2011.  There is no dispute that Title IX applies to Margate School.  After the parties engaged in discovery, Defendants moved for summary judgment as to Ali's claims.[3]

Ali first registered to attend Margate School's massage therapy certification class in late May of 2010.  Deposition of Shanaz Ali at 9 [DE 33-4].  She met Defendant Barnett that day after he personally approved her request for discounted tuition.  Id. at 25-27.  Barnett asked her where she was from, and after she stated she was from Trinidad, he told her he was British and played cricket.  Id. at 25.  After she began day classes in June of 2010, Barnett approached her in the hallway and said, "You are the girl . . . who was in my office before when we started school.  So, you did start?"  Id. at 21.[4]  Barnett asked her if she played cricket, to which Ali replied, "sometimes."  Barnett then stated that "we could play cricket."  Id. at 31.  Barnett put his hand on Ali's right hand or forearm for a few seconds when he made this last statement.  Id. at 32.  A week later, Barnett approached her in the hallway, touched her hand or shoulders and moved close to her and asked how she was doing.  Id. at 21, 33.  This contact made Ali uncomfortable.  Id. at 21.  Between late June and early November, there were three to five instances of Barnett approaching her in the hallway and touching her in a

---

[2] By separate order, the Court has previously addressed Plaintiff Stephanie Groh's claim for retaliation in Count II [DE 53].

[3] Ali did not allege a claim under Title IX against Defendant Barnett.  Therefore the Court does not address the individual liability issue discussed by Defendants in their motion.

[4] Barnett may have stated, "You're the Trinidadian girl that was enrolling a couple of weeks ago."  Ali deposition at 22.

similar manner.  Id. at 34.  While Ali stated that she tried to avoid him, she testified that she changed her class schedule from day classes to night classes because of her babysitting situation.  Id. at 19.

On Monday evening, November 8, 2010, Ali was in the hallway before class when Barnett approached her, asked how she was doing, tapped her shoulder and hugged her.  Id. at 35-36.  In her errata sheet, Ali adds that Barnett said she was extremely attractive and wanted to help her with her studies.  Errata Sheet for p. 36 [DE 42-2].  Barnett then said that "Let's see if we can help each other out."  Ali Deposition at 36-37.  Ali did not know what he was referring to as the two went into his office and he closed the door.  Barnett sat behind his desk with Ali across from him.  Id. at 37.  Barnett said "Let's see if we can help each other out, you know, I can probably do something for you.  You can do something for me."  Id.  Ali felt trapped and stuck and thought if she walked out she would not be able to go to school anymore.  Id. at 38.  Barnett then said that "I'm the owner of the school, you know, I can pay your tuition.  I can pay your weekly amount if you, you know, could do something. . . .  I can pay your stuff and you can, you know, give me a favor, do me a favor."  Id.  Ali assumed he meant a sexual favor, and stated that "you shouldn't even be saying that.  You're married, you know, you have a kid.  I have kids."  Id.  Barnett then said, "Well, you know, everybody does it now."  Id. at 38-39.  Ali declined the proposition, saying "I don't want to do anything like that."  Id. at 39.  Barnett said "that he liked Trinidadian women and that he could do anything because he owned the school."  Errata Sheet for p. 39 [DE 42-2].  Barnett then asked if Ali had a friend who would do it.  Ali deposition at 39.  Ali said no and left his office.  Id. at 40.  In her Errata Sheet, she alleges that Barnett

3

followed her into the hallway, touching her and telling her she was attractive, conduct that frightened Ali because she feared that she might be expelled or have her grades adversely affected. Errata Sheet for p. 46.

Teacher and co-Plaintiff Stephanie Groh then saw Ali crying and shaking in the hallway. Deposition of Stephanie Groh at 68 [DE 34-4]; Deposition of Shanaz Ali at 42 [DE 33-4]. Upon reaching her, Ali explained that Defendant Barnett had just propositioned her in his office, and she did not know what to do. Ali deposition at 42. Groh told Ali that she would take care of it. Id. at 43. Ali did not go to class and went home. Id. at 47. She came back to school the next day to speak with Stephanie Groh. Once Ali learned that Groh had been fired, Ali never went back to the school. Id. at 49-50. Ali never told any other student, teacher, or administrator about the incident. Id. at 54.

Barnett denies the November 8 incident ever took place. Deposition of Stanley Barnett at 51. Barnett also denied ever making the comment that he was attracted to Trinidadian women. Id. at 43. He stated that if an instructor or administrator offered a quid pro quo for sexual favors to a student, such conduct would be investigated as a possible violation of Margate School's sexual harassment policy. Id. at 54-55, 57.

Margate School's sexual harassment policy directs students to report any such incidents to the "Director of the School or the Office Manager." Sexual Harassment Policy [page 13-14 of DE 33-2]. While Miriam Tirado was the Director of the School, it is not clear who the "Office Manager" was at the time of the November 8 incident. The policy then states that if a verbal complaint to the Director has proven ineffective, or you are unable to complain to the Director, then students are to file a complaint through

Margate School's grievance procedure.  Id.  The procedure starts with a student first notifying her instructor either verbally or in writing, and if not resolved, then the student is to notify the Director of Student Affairs.  Handbook at p. 9 [DE 33-2].  Other than telling Groh, there is no evidence that Plaintiff Ali followed the procedures spelled out in the policy.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

5

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### B. Title IX Discrimination – Quid Pro Quo

Both sides argue that Title VII case law should be used as the basis for analysis of a motion for summary judgment on a Title IX claim.   Plaintiff's claim under Title IX can be maintained under two different theories, both of which Plaintiff asserts in this case.  A plaintiff can prove a violation by either showing that the harassment culminated in a "tangible employment action" or that she suffered "severe or pervasive" conduct. Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006). As applied to the Title IX area, Plaintiff Ali must show that she was deprived of some benefit or suffered some tangible adverse action, such as decreased grades.  Wills v. Brown University, 184 F.3d 20, 25 (1st Cir. 1999).[5]

Although Ali testified that she was afraid something adverse to her grades would

---

[5]  There does not appear to be an opinion from the United States Court of Appeals for the Eleventh Circuit addressing a quid pro quo Title IX claim, leading the parties to cite opinions from other Circuits.  The Circuit Court of Appeals decisions cited by Plaintiff did not address a quid pro quo claim, only a hostile environment claim. Jennings v. University of North Carolina, 482 F.3d 686, 694-697 (4th Cir. 2007); E.E.O.C. v. R&R Ventures, 244 F.3d 334, 338-39 (4th Cir. 2001).

happen to her after she rejected Barnett's quid pro quo offer, there is no evidence that any denial of any educational benefit or any adverse educational action ever occurred. Ali's grades did not suffer as a result of her rejection of Barnett's alleged advances. Ali suggests that she suffered some sort of constructive discharge because she was afraid to return to school. However, the facts remain that Ali did not return to school on her own choosing. There is no evidentiary basis in the record to support the claim that she suffered a tangible educational action or was denied any benefit on account of her sex. Thus, the Court concludes that there are no disputed issues of material fact concerning the quid pro quo harassment claim. Summary judgment in favor of Margate School on this part of Count I is therefore appropriate.

### C.  Title IX Discrimination – Hostile Work Environment

While the Court will use Title VII caselaw as a framework to decide the present motion, the Court notes that the United States Court of Appeals for the Eleventh Circuit has stated that a sex harassment action under Title IX is "available only in limited circumstances," implying that it is more difficult to bring such an action under Title IX, as opposed to under Title VII. Hawkins v. Sarasota County School Bd., 322 F.3d 1279, 1289 (11th Cir. 2003). Under the hostile work environment theory, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); Henson v. Dundee, 682 F. 2d 897, 904 (11th Cir. 1982). A plaintiff establishes a prima facie case of hostile work environment by showing: (1) the Plaintiff belongs to a protected group;  (2) she was

subjected to unwelcome sexual harassment;  (3) the harassment complained of was based on sex; (4) the harassment complained of was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment; and (5) the employer is liable.  Meritor, 477 U.S. at 65;  Sparks v. Pilot Freight Carriers, Inc., 830 F. 2d 1554 (11th Cir. 1987); Mendoza v. Borden, Inc., 195 F. 3d 1238 (11th Cir. 1999) (en banc).

"The EEOC Guidelines emphasize that the trier of fact must determine the existence of sexual harassment in light of 'the record as a whole' and 'the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.'" Meritor, 477 U.S. at 69; citing 29 CFR § 1604.11(b) (1985).  "Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component."  Mendoza, 195 F.3d at 1256; Harris, 510 U.S. at 21-22.  "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Oncale v. Sundowner Offshore Services, Inc., et al., 523 U.S. 75, 80 (1998).  All of the circumstances may include; the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993).  "No single factor is required."  Id. at 23.

As the Supreme Court stated in Meritor, "'mere utterance of an...epithet which engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment to implicate Title VII.  Conduct that is not severe or pervasive enough to

create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." Harris, 510 U.S. at 21.

For purposes of the summary judgment motion, it is clear that Plaintiff testified that the conduct was unwelcome, sexual in nature, and related to her gender. Defendant argues that Plaintiff cannot show that the alleged harassment, under an objective standard, was sufficiently severe or pervasive to alter the conditions of Plaintiff's education and create an abusive environment. Defendant relies upon the Mendoza opinion, where repeated vulgar conduct was deemed not sufficiently pervasive but merely rude.

In this action, although Ali meets the subjective component that the harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment, Ali has not met the objective component. The Court first notes that the various out of district cases cited by Plaintiff involved alleged victims aged 17 and younger. See Plaintiff's Memorandum in Opposition at pp. 4-6 [DE 42]. Plaintiff Ali was 24 years old during the relevant period in this action. Although Barnett was substantially older and was the owner of the trade school in question, his slight touching of Plaintiff's hand or arm three to five times in open hallways over a five month period, combined with general questions about how Plaintiff was doing, and culminating in one instance in his office where he allegedly asked for sexual favors in return for free tuition, do not rise the level of sufficiently severe or pervasive conduct under Eleventh Circuit case law.

In the Mendoza opinion, a supervisor allegedly constantly followed and watched

9

the victim, stared at her groin area and repeatedly made a sniffing motion.  195 F.3d at 1243.  This behavior continued for approximately eleven months, with one incident of physical conduct, in which the supervisor brushed up against the victim while she was sending a facsimile.  Id.  While it is true that the supervisor in Mendoza never made any sexually suggestive comments, the behavior of the alleged harasser was far more sexually vulgar than Barnett's alleged actions.  When the Mendoza opinion is combined with the decision in Hawkins, where the Eleventh Circuit held that the harassment under Title IX must be "so severe, pervasive, and objectively offensive that it systemically deprived the victims of access to the educational opportunities of the school," this Court concludes that even taking all disputed facts in Plaintiff Ali's favor, summary judgment is appropriate in that Plaintiff has failed to show sufficiently severe or pervasive conduct that meets her burden.[6]

### D.  State Law Claims

Defendant Barnett also moves for summary judgment on Plaintiff's state law claims against him.  Taking first the claim for false imprisonment, this tort is defined as the unlawful restraint of a person against his will.  Spears v. Albertson's Inc., 848 So.2d 1176, 1178 (Fla. App. 1st Dist. 2003).  The gist of false imprisonment is the unlawful detention of the plaintiff and the deprivation of her liberty.  Id.  "A plaintiff in a false imprisonment action need not show that force was used in the detention or that he or

---

[6] Based upon this conclusion, the Court does not address the employer liability prong regarding the adequacy of the sexual harassment policy and whether Ali unreasonably failed to take advantage of the policy.

she orally protested to demonstrate the detention was against his or her will. . . . However, a plaintiff alleging false arrest must show the restraint was unreasonable and unwarranted under the circumstances." Id. A plaintiff is not restrained when there is a reasonable means of escape, which is apparent or known to the person. In re Standard Jury Instructions in Civil Cases, § 407.4, 35 So. 3d 666 (Fla. 2010).

In this action, Plaintiff Ali has failed to show that any restraint was used in that she agreed to go with Barnett into his office and she could have left his office at any time. In fact, Ali did leave Barnett's office prior to the conversation being over, as Barnett allegedly followed her into the hallway to ask her to reconsider his offer. Although the door to the office was closed while Plaintiff was inside the office with Barnett, and Plaintiff was subjectively afraid of the consequences of her leaving, a reasonable means of escape was apparent. The Court therefore concludes that Plaintiff has failed to prove as a matter of law that the tort of false imprisonment was committed.

Turning next to the assault claim, under Florida law, an assault is any intentional, unlawful threat by word or act to do violence to another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear that such violence is imminent. Fla. Stat. § 784.011; Colony Ins. Co. v. Barnes, 189 Fed. App'x. 941, 943 (11th Cir. 2006). Based upon the record as a whole, there is no evidence that any violence was ever imminent or threatened by Barnett during the instances that he touched Ali, nor during the alleged proposition in his office. There is no construction of the facts in the record by which one could conclude that Ali had a well-founded fear that

11

any violence was imminent.  Therefore, summary judgment in favor of Barnett on the assault claim is appropriate.

Finally, turning to the battery claim, under Florida law, a battery occurs when a person "actually and intentionally touches or strikes another person against the will of the other."  Fla. Stat. § 784.03; Barnes, 189 Fed. App'x at 943.  In this case, Ali testified that Barnett touched her several times against her will, causing her to be uncomfortable.  While Defendant argues that Barnett lacked the intent to cause harm or that Ali never told Barnett that the touching was unwelcome, the Court must conclude at the summary judgment stage that Plaintiff has set forth disputed issues of material fact that preclude the granting of summary judgment on her battery claim.

### E.  Motion to Strike Errata Sheet

Defendants seek to strike the deposition errata sheet that Plaintiff Ali filed in opposition to the motion for summary judgment.  Defendants argue that the errata sheet was filed more than 30 days after Plaintiff received her deposition transcript, and therefore Plaintiff Ali waived the right to correct the transcript.  In response, Plaintiff contends that because the corrections did not contradict the given testimony, the information should be akin to submission of an affidavit in response to a motion for summary judgment.

Both sides make the appropriate legal argument.  However, the flaw in Plaintiff's analogy is that the errata sheet was not submitted as a sworn statement from Plaintiff Ali, which would have made it akin to an affidavit.  Plaintiff is correct that in the Eleventh

Circuit, a court must find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit.  Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987) (see cases cited therein).  Because the Court concludes that the outcome on the motions for summary judgment is not affected by keeping the errata sheet in the case, and therefore Defendants cannot show prejudice, the Court will deny the motion to strike the errata sheet.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion for Summary Final Judgment [DE 33] is hereby **GRANTED in part** as to Counts I, IV and the assault claim in Count III, and **DENIED** as to the battery claim in Count III;

2.  Defendants' Motion for Summary Final Judgment [DE 32] is hereby **DENIED** as a duplicative motion;

3.  Defendants' Motion to Strike Errata Sheet [DE 46] is hereby **DENIED**;

4.  This case remains on for Calendar Call on Thursday, October 6 at 9:00am.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 3rd day of October, 2011.

*James I. Cohn*
JAMES I. COHN
United States District Judge

copies to:
Counsel of record on CM/ECF